# UNITED STATES *versus* JOHN REED

January 3, 1829

332

B. F. H. Witherell, district attorney.
William A. Fletcher, attorney general.
Henry S. Cole, Augustus S. Porter, and Charles W. Ewing, attorneys for defendant.

## [OPINION]

### Statement.

By the record & the testimony reported by the Judge who presided at the trial, it would seem that in the latter part of the year 1825, property to a large amount in value, is supposed to have been taken from the shop of Mess[s] Lewis & Anderson, silversmiths, in Detroit: —— A portion of that property consisted of watches, left at the shop, in the course of trade, for repair, &c.

—— At the time of the transaction, & for a long time before, Lewis, a partner of the firm, was absent from the Country: —— Anderson disappeared about the time of the supposed Larceny, under circumstances which, excited fearful apprehensions of his murder: —— The public attention was forcibly awakened to all the circumstances attending the matter, & much feeling was excited.

John Reed (the prisoner,) among others was suspected of having participated in the supposed theft, some of the articles missing having been traced to his possession:— In 1828, he was indicted for stealing the articles, so traced to his possession.— He was tried, & a virdict of guilty returned by the Jury:— But a motion in arrest of judgment, & a motion for a new trial also were submitted; — & according to the provisions of our Law, came on to be argued together.

One of the causes assigned in arrest, involved considerable difficulty— it received the deliberate attention of the Court— But the motion in arrest was overruled:— A case referred to in Lord Raymond (710.) commented upon & affirmed in a case reported in Addison's Reports, being deemed conclusive.

The motion in arrest being thus disposed of by the unanimous decision of the Court, the application for a New trial came on to be decided; & upon *this* question the opinions of the Judges were delivered seriatim— And upon that branch of the case, the reasons assigned by Woodbridge Judge, were as follows Viz—
Opinion

"Among the causes assigned in the motion for a new trial, one is, that in delivering his charge, the Judge who presided at the trial, had misdirected the Jury in matter of law. —— On this point, there is no difference of opinion among the members of this Court: —— We all considered the charge as free from any just exception, & as exhibiting a fair exposition of the law involved in the matter committed to the Jury: —— other causes also have been assigned, some more, some less, intitled to consideration:— But the one, upon which the motion principally rested, was that alluded to in the 3[d] of the causes assigned—the 1[t] for a new trial

—— It relates to the *elemental constitution* of the Jury which tried the cause.—— Such a topick, is at all times worthy of much consideration; for it involves the character & usefulness of that peculiar sort of trial.

From the time of the first establishment of the Saxons in the land of our ancestors, there is good reason to suppose that the right of Jury trial obtained: —and no change of Government, & no subsequent convulsion of society there has expunged it from the jurisprudence of that Country— Under the Baronial aristocracy,— in the times of the civil laws,— during reign of their most despotic Princes, as well as during the period of the Commonwealth, the right of trial by Jury, has continued in England to constitute the only sure guaranty of private right: —Time, which withers all things, has yet only polished the more, a political contrivance which does not cease to be a source of exultation—of national pride, of enthusiastic attachment! —— Our ancestors brought it with them, from the Country of their origin;— & with it, an ardor of affection for it, which neither time, nor change of circumstance could lessen. —— If during the troubles which preceded the revolution, this right were sometimes invaded, the fact, only rivitted the right more closely in their affections: — It was soon placed at the basis of all our constitutional law:—— it was irrevocably established as the *fundamental law of the Territories*. —— If there exist a duty then, more imperative upon this Court than any other, it is, that it should preserve, in all its theoretic purity the right of Jury trial.

The main purpose of all Government is to preserve & perpetuate the civil liberties, & all the private rights of individuals—— In monarchical Governments those rights are most subject to invasion by the *power of the Crown:* —— Against such danger, the experience of another country has proved that the right of Jury trial affords the surest guard.— In Republican Governments,— in Governments founded, as ours are, upon *public opinion*, the danger, most to be apprehended, is from causes which spring from popular excitement,— from those occasional, but temporary periods of unrestrained effervescence of feeling, which, influencing whole neighbourhoods, sometimes stiffle & overpower all the claims of private justice.— To guard therefore against such evils,— to guard against all extraneous causes of prejudice & bias in jurors, — is emphatically, the duty of this Court.

It was under the influence of such reflections, that the Court approached the examination of the particular matter which constitutes the operative motive for the decision which a majority of this Court, have arrived at. —— And what is that matter? —— The very first person, of the regular panel of jurors, who was called to the book to be sworn, was challenged, in conformity with the provisions of the statute, put upon his voir dire, & admitted that he had formed & expressed an opinion as to the guilt of the prisoner— & that he still retained the same opinion. — The Court decided that he was nevertheless a competent Juror, & overruled the challenge. —— But a different principle was followed by the Chief Justice of the U. States in the case of Aaron Burr: — a different rule obtained in the trial of Selfredge in Massachusetts;—— a different one prevailed at the trial of Goodwin in N. York:— a partial infringement of this right of challenge, by Judge Chase, in the trial of Callender, was one of the principal causes of his impeachment: & a new trial in the case of Fries, was granted by the Circuit Court of the U States, because one of the Jurors, (it was discovered after the trial;) had previous to his being sworn on the Jury, expressed sentiments unfavourable to the prisoner's case! . —— In short, it is a mockery of justice to pretend that, *that* is an *impartial* jury, any of whom, had *previously* formed their opinions in the case! —— The lives—the characters— the liberty or the property of individuals would be but illy secured in

such hands;— & if *such*, may be our jurors, the distinguishing merit of the institution will have ceased;— popular suffrage will furnish the only remaining guaranty by which we will hold our rights:— & our boasted Jury trial may soon be thrown away as an idle formality! —— But it is urged that the opinion of the Juror who was challenged, was formed solely upon the common rumour which prevailed, concerning the guilt of the prisoner,— & that the Juror himself, upon being further interrogated affirmed that he felt himself competent to render justice to the prisoner! —— But of what matter was it to the prisoner, how, or of what materials, the Juror had made up his opinion, so as that opinion was actually formed & expressed?— Was there, any the less, a prejudice—a bias upon his mind? —— And if *such* a prejudice however honestly acquired, would, in legal intendment, disqualify him as a Juror, lest it might influence his virdict, to put the question to him "whether he would deem himself capable, nevertheless to do justice to the prisoner?— is surely referring the point to an incompetent tribunal; —— the same bias which might affect his verdict would, *as* certainly affect his answer to such a question.

—— Upon full consideration then, the Judges of this Court are unanimously of the opinion, that the challenge to the Juror, was properly made— that it ought to have been sustained— that the prisoner had a right, *without resorting to any other privilege the law may have given him*, in virtue of the challenge he made, to exclude the man from the Jury;—— & that by overruling that challenge his legal rights were violated.

But our Statute law gives to a prisoner, a further right, to challenge two Jurors, without showing any cause.—— Availing himself of the privilege, after his challenge to the favour had been overruled, & the Juror about to be sworn, he challenged him peremptorily.— Many challenges were subsequently made;— of which some were sustained, & some overruled: The whole of the panel regularly returned, was exhausted, & five of the Jurors finally sworn, were talesmen: — but the prisoner never afterwards availed himself of his second & last peremptory challenge. — Hence it is insisted, that the *prisoner suffered no damage*, by the irregular and wrongful rejection of his first challenge;— and that, as no practical injury was sustained, there accrued to him, no right, however illegal the decision of the Court might have been, to demand, on that ground, a new trial.

—— It becomes proper to inquire then First;— Was there a fair— legal presumption, that the prisoner did suffer a practical injury, by the overruling of his challenge? —— And 2nd, if the presumption be that the verdict would have been the same, if the challenge had been sustained,— is it competent nevertheless to grant a New trial?

In regard to the first mentioned subject of inquiry, it was born in mind, that the public attention had been actively engaged, in regard to the transaction;— this is strongly evidenced, (independently of assertions of Counsel to that effect;) by the number & causes of the challenges made to the jurors. —— It is to be noted that the challenge, the overruling of which, is excepted to, was the first one made; — it was made in relation to the first person who came forward to be sworn. — It was in relation to this first juror, that an illegal doctrine was advanced, which, it is fair to presume gave a character to the whole of the proceedings which followed, concerning the organization of the Jury: — However much the counsel for the prisoner, may have been grieved— disappointed or surprized at the decision, is it to be supposed, that in the face of that decision— & in direct opposition to the principle established by it, they would further have persisted, in that stage of the

case, & before the *same Judge*, in urging, as to the other Jurors, as they respectively came forward to be sworn, the *same* doctrine which had, immediately before been fully & unequivocally overruled? —— Such *is not the presumption;*— to have done so, would have been too palpable a violation of that respect which is due from every member of the bar, to every Judge, while in the exercise of his office. —— The prisoner then must have lost, *in all his subsequent challenges to the favour,* the benefit of the correct doctrine his counsel had urged.

—— Is it not an injury to be forced to a trial by a partial — a prejudiced Jury? —— Is it not an injury to be Deprived of the practiced & legal means by which to test the impartiality of a Jury? —— Who is he, so wretched & so sinful, as that he shall be deprived of such a right? —— But it is said, that notwithstanding the overruling of so many challenges, the Prisoner did not finally avail himself of his second & last peremptory challenge: —— & if any well founded objection existed against any of the Jurors sworn why did he reserve his right?

It might be sufficient answer to say, that the right of peremptory challenge was not *intended* by the law, nor given, to be *so* used: —— It was given in the tenderness & compassion of the law, for prisoners *so* charged, to be used,— where *no legal cause* of objection existed; —— to be used, where from the aspect — the manner— the countenance of a man summoned as a juror, the criminal *feels* without being *able* perhaps to define the cause, that he would not be safe in his hands: —— Certainly it cannot be pretended that it was given him as a protection against the supposed illegal deprivation of an established right!

But for whatever purpose it may have been given him,— could he, without the most manifest danger, have used his privilege of two peremptory challenges, otherwise than he did? —— At the very threshold of his trial,— upon his *first* challenge, he is met by the appalling intimation, that a person who had, upon common rumour formed an opinion touching his supposed guilt,— expressed that opinion, & "retained the same opinion still," was, nevertheless a competent Juror!— With the promptitude which was necessary, he immediately applied one of his two peremptory challenges.— But twelve jurors yet remain to be selected;— restricted & narrowed down as his right of challenge had been, he yet succeeded in several, & the regular panel was exhausted: —— The Sheriff by the order of the Court, was among the by-standers, for talesmen— the prisoner did not,— could not know, *who* they might be;— but he knew the public prejudice— & he knew too well, what principle had been established, to govern in the selection. —— What course then should he adopt? —— The prodigal & desperate one, of applying instantly his only remaining peremptory challenge, & trust to chance for what might follow? —— His Counsel chose a more considerate one: He kept in reserve, his last challenge, lest some one should come, still more obnoxious— still more prejudiced than any he had as yet fruitlessly challenged:— It seems to have been conceeded that it must be used before the juror was sworn in chief, or not at all;— he kept his privilege then, as his last refuge, against an evil, still greater than he had been already met by:—— But it *chanced* so, that the *last* talesman, was free from previous bias!

Can it be said then that the prisoner suffered no inconvenience,— no positive injury, from the deprivation of his right?—— was not the proper composition of the Jury left to *chance?* — Was he not unduly harassed in all his movements in regard to the organization that tribunal? —— Was he not, from the danger which hung over him, & from a sense of necessity, *compelled* to withhold his privilege of one more peremptory challenge?

But if I were confident that substancial justice had been done by the Jury;— if I were not able to measure, nor to see, the *quantum* of practical injury which the prisoner had sustained by the illegal decision of the Judge, yet I should feel bound, upon the application of the prisoner, upon *such* a showing, to grant the New trial asked for.— It would be sufficient for me to be judicially informed that the party had been illegally deprived, by the act of the Court, of a positive right, —— of a high constitutional right;—— of one, which went to the composition & character of the tribunal which was to try him: —— And admitting that the final result would have been the same to the prisoner, if no illegal decision had been made,— still, it would have been leaving to the work of chance, that, which the law intends shall be certain!

But the law *presumes* an injury, whenever a legal right is violated: —— It does not— will not stop to measure, or to weigh it. —— Would it be a justification in an action of trespass, for the Defendant, to say, he did not hurt your grass which he illegally stepped upon? —— Would it be an answer, that it was sterile ground or barren rock? —— No;— the law *intends* an injury, however undefinable, in the violation of the plff's right of property. —— Is it matter of justification for an officer, serving an *illegal* process, that the person against whom it issued was justly liable? — or, if he serve a *legal* process, *illegally*, will he be allowed sucessfully to plead that "substancial justice" has been done? —— If such be the law, then is the law put into every man's hands to execute;— then, is it lawful for you to commit a homicide without the *form* even, of a trial, so as you ultimately show, that the man you kill, had been a murderer!

Nothing has a more decided tendency to mislead an inconsiderate man, than *general maxims*. — It is a general maxim, that a New trial shall not be granted, for a misdirection of a Judge to the Jury, on a point of law, provided, after all, "substancial justice" be done: — But is this an universal rule? —— Is it to apply not only to an erroneous charge, touching the law involved in the matter to be decided on by the Jury, but also to an error concerning the organization of the Jury itself?

Then a virdict found in one case, by a Jury returned in a venire for another, shall not be set aside, if, in the *opinion of the Court* "substancial justice" has been done: —— Then, if A, by mistake, answer & is sworn as a Juror, when in fact it was B, who was called, on the venire, the verdict of that Jury, will not be set aside, if "substancial justice" be done: —— Then, & if *such* be the law, the Court, in the case of Fries, committed a great error, by granting a New trial, because of the declaration of Rhoads, prior to the trial; — for who doubted, but that it was a *true* verdict which the first Jury found?— — It is equally true, if the general maxim alluded to, is to be made to apply *universally*, that the virdict of 12 men not sworn,— or indeed, (for where will the rule stop?) the finding of any other number of men, by accident met together,— ought to have equal efficacy with the most formal virdict. —— But such happily, is not the law — How often are virdicts, in prosecutions like this, set aside, after a fair hearing & perhaps "substancial justice" done,— because of some formal defects — in some part of the proceedings? —— Why, if such *had* been the rule, was the outlawry reversed, in Wilke's case? —— Why, if "substancial justice" were done, is an arrest made on Sunday — or by breaking open an outer door, set aside, all the proceedings vacated— & the officer moreover rendered liable to persons so arrested, in thousands of dollars — where in truth perhaps, only the slightest inconvenience was sustained? —— It is because, it is the interest of all,— of the whole community— to

protect *each* individual in society, in *all* his legal & constitutional privileges —— It is because you shall not *break* the law, in order to administer the law!

All now admit, that the legal & constitutional privileges of the prisoner, were withholden from him at the trial. —— And, would it be a safe principle to adopt, that they who inflict the wound, shall, exclusively estimate the intensity of the suffering? —— Shall it be allowed to the Court to say, "we have deprived you of a positive right — of an established constitutional privilege, — but yet, we decide that you have suffered no damage by the deprivation?

—— It is not given to the Court so to decide: —— I, as one of the Court, do not *dare* to act upon such a principle— It is sufficient for me to learn that the prisoner has been deprived of a fixed & positive right,— to detirmine me, to vacate all the proceedings in the case, which have been had subsequently, & which can by any possibility, have been affected by that deprivation.

However fair therefore, the trial, in other respects may have been; ——& however faint the rational hopes of the prisoner may be, of obtaining a different virdict, at another time, I feel, nevertheless, for the reasons I have stated, bound to sustain the motion for a New trial.

Note— This opinion was not reduced to writing until several days after it was delivered orally— & does not contain the observations made more at large on the points in arrest— It is *substancially the same* as delivered on the motion for New trial.